UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MIKE FLYNN, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12-CV-68 SNLJ |
| | ) | |
| CTB, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs are individuals who have brought this action on behalf of themselves and a putative class alleging that certain farm equipment did not function properly.  Initially, plaintiffs named several entities as defendants, but only one defendant remains.  That defendant, CTB, Inc., has moved to dismiss (#25), and the matter has been fully briefed.  For the reasons set forth below, the Court grants in part, and denies in part, the motion to dismiss.

**I.      Background**

For purposes of the motion to dismiss, the facts alleged in the complaint are taken as true. At various times in 2007 and 2008, plaintiffs each purchased a "Harvest Time" grain bin unloading system which was manufactured by the defendant. The system has an auger within a sweep arm that moves along and around the grain bin floor.  The sweep pushes the grain into holes on the grain bin floor, and another auger moves the grain along to other unloading vessels. The system was marketed to unload any free-flowing grains.  The system is more efficient than unloading the bins by hand, and it reduces hazards to farm workers by allowing workers to remain outside the bins.

Plaintiffs allege that the system does not work as advertised.  They say that the power sweep component of the system fails to function properly because it cannot maintain sufficient contact with the grain nor move it with sufficient force to sweep the grain into the unloading system beneath the grain bin floor.  As a result, human workers must be employed to push the sweep into the grain, exposing the workers to hazards, causing delays, and decreasing the value of the grain bin.

Plaintiffs further allege that defendant has been aware of the shortcomings of its Harvest Time system since at least 2006.  Defendant has made "numerous modificiations" to the sweep to improve its effectiveness, but the changes have not remedied the inherent design limitations.  Plaintiffs state that the sweep cannot sweep common grains such as corn, rice, wheat, soybeans, and sorghum (apparently the sweep is more effective on corn and chickpeas, which plaintiffs allege were tested by defendant).  Plaintiffs thus seek class-wide relief for all purchasers of the Harvest Time power sweeps in the form of refunds or replacement sweeps.  Plaintiffs' three counts are for Breach of Warranty, Unjust Enrichment, and Common Law Fraud.

**II.    Legal Standard**

Defendants seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity.  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  A complaint must be dismissed for failure to state a claim if it does not plead enough facts to state a claim to relief that

2

is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007) (abrogating the traditional "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  A petitioner need not provide specific facts to support his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 222 (2008) (quoting *Twombly*, 550 U.S. at 555-56 & n.3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003).  Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Twombly*, 550 U.S. at 555 (internal citations omitted).  "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged." *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).  Finally, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950).

3

**III.     Choice of Law**

In this diversity action, the Court applies the substantive law of the state in which the district court sits. *Urban Hotel Dev. Co. v. President Dev. Co., L.C.*, 535 F.3d. 874, 877 (8th Cir. 2008); *Roemmich v. Eagle Eye Dev. L.L.C.*, 526 F.3d. 343, 348 (8th Cir. 2008). In the present case, Missouri substantive law applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 561 (court assumes Missouri law controls where both parties relied on Missouri law). The obligation to apply state law extends to the forum state's choice of law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Missouri honors choice of law provisions in contracts where application of the selected forum's law is not contrary to a fundamental policy of Missouri. *Kagan v. Master Home Prods., Ltd.*, 193 S.W.3d 401 (Mo. Ct. App. 2006). Here, the parties' contract terms contain an Indiana choice of law clause. Because both Missouri and Indiana have enacted Article 2 of the Uniform Commercial Code pertaining to sales of goods, there is no policy conflict, and a Missouri court would thus enforce the choice of law provision.

The parties agree that Indiana law governs plaintiffs' warranty claims. However, they disagree over whether Missouri or Indiana law applies to the non-contractual claims Unjust Enrichment (Count II) and Fraud (Count III). The Terms of Sale's choice of law provision states "This Agreement shall be governed by the laws of the State of Indiana." Defendant argues that the Agreement and *only* the Agreement is governed by Indiana law, so claims arising independently of the agreement are not subject to that provision.

Defendant relies on *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001); in that case, the parties' choice of law provision stated that the "Agreement shall be

4

governed by…the law of the State of Illinois, as applied to contracts made and to be performed solely within such state, without regard to conflict or choice of law rules, provisions or principles." 254 F.3d at 687.  There, the Eighth Circuit held that "While this provision adequately covers disputes concerning how to construe the [Agreement], the language is not broad enough to govern the choice of law for the fraudulent concealment claim, which sounds in tort."  *Id.*  As a result, the Court held that the forum state's choice of law rule governed.

Here, unlike in *Inacom*, the Terms of Sale do not contain the "as applied to contracts" language.  Thus, plaintiffs contend that this Court must apply Indiana law to all of plaintiffs' claims.   However, a choice of law provision "will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended."  *Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1302 (7th Cir. 1997) (citing, e.g., *Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir.1996); *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.,* 100 F.3d 429, 432-33 (5th Cir.1996); *Caton v. Leach Corp.,* 896 F.2d 939, 942-43 (5th Cir.1990)).  The Eighth Circuit adhered to the same standard in *Inacom*.  254 F.3d at 687-89 (discussing the intentions of the parties as manifested by the choice of law clause).  That court contrasted the *Inacom* parties' clause to "broad clauses, which choose a particular state's law to govern, construe and enforce all rights and duties of the parties arising from or relating in any way to the subject matter of the applicable contract," and noted that the clause provides only that a particular state law should apply to construe the contract.  *Id.* at 687-88 (quoting *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990); internal changes omitted).

On the one hand, plaintiffs would have the Court apply the choice of law provision to the contract and related tort claims because they insist it is the sort of "broad clause" that was

5

contemplated by *Inacom*. On the other hand, defendant contends that the provision is not broad enough. This Court agrees with defendant. Looking to *Caton*, the Fifth Circuit case to which the Eighth Circuit refers in *Inacom*, it appears that the parties' choice of law provision is *narrow*. The instant provision (like the provision in *Caton*) addresses only the "Agreement" itself, and it "does not address the entirety of the parties' relationship." *Caton*, 896 F.2d at 943. [1] As a result, the choice of law provision does not apply to the plaintiffs' non-contract claims, and Missouri choice of law rules shall apply instead to Counts II and III.[2]

**IV.  Discussion**

Plaintiffs' Complaint includes three counts: Count I, Breach of Warranty; Count II, Unjust Enrichment; and Count III, Common Law Fraud. Defendant states that each count fails to state a claim against it and that the Complaint should be dismissed in its entirety.

### A.  Count I: Breach of Warranty

Plaintiffs' first count is for Breach of Warranty, brought under Ind. Code Ann. §§ 26-1-2-313 & 314. Defendant contends that the breach of warranty count fails for both breaches of express and implied warranties.

#### 1.  Breach of express warranty

---

[1] Plaintiffs rely on *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1389 (8th Cir. 1997), which held that the parties' choice of law provision applied to plaintiff's fraud claim. However, the provision in question stated that the contracting party "hereby ubmits to the jurisdiction and venue of the courts of the State of Minnesota with respect to all disputes arising hereunder"; it was thus a much broader provision than the provision here.

[2] The Court notes that, in the retailer's lawsuit against the same defendant here regarding the same subject matter, *Bruce Martin Constr. Co. v. CTB, Inc.*, No. 1:10CV205 SNLJ, 2012 WL 718624, *2-5 (E.D. Mo. April 2012), the parties and the Court relied on Missouri law for the non-contract claims.

The Harvest Time system's warranty covers "defects in material or workmanship for one (1) year from and after the date of initial installation by or for the original purchaser."[3]  The warranty states that, if a defect is found by the manufacturer within the one-year period, the manufacturer will repair or replace the product free of charge or refund the original purchase price to the original purchaser.  In all caps writing, the warranty specifically disclaims "any and all other warranties, including...express and implied warranties as to merchantability, fitness for particular purposes sold and description or quality of the product furnished hereunder."

Defendant first argues that plaintiffs' complaint alleges a "design defect" and nothing more.  Because the warranty covers only defects in "materials and workmanship," any claim under the warranty for a design defect is not covered.  Plaintiffs contend that their complaint adequately pleads breach of warranty without alleging exactly why the Harvest Time system failed.  They also note that the defendant's efforts to remedy and repair the system's power sweeps suggest that the defendant may not view the problem as a design defect.

Plaintiffs' complaint uses the term "design" several times in its general allegations:

- Paragraph 2:  "A power-sweep unloading system, when properly designed, has an auger within a sweep arm…"

- Paragraph 5:  "However, these changes have not remedied the design limitations of their Harvest Time power sweep."

- Paragraph 24:  Quoting a letter from defendant to the retail seller, the "unload systems…are not designed for use in Rice…".

---

[3] The warranty is "necessarily embraced by" the complaint and thus may be considered by the Court at the motion to dismiss stage. *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

7

- Paragraph 41(b)(1): in listing the common and predominant questions of fact and law, plaintiffs identify as a common question, "whether the power sweep of Brock's bin unloading system was properly designed."

Under the Breach of Warranty Cause of Action section, the plaintiffs state simply that the "Defendants' Harvest Time bin unload system is defective and contravenes their warranty." Cmplt. ¶ 46.  Plaintiffs then describe the system's problem:  "The power sweep will not sweep around the grain bin under its own power when unloading common grains such as rice, wheat, soybeans and in some cases corn, rendering it ill-suited for its intended purpose."

Federal Rule of Civil Procedure 8 embraces a liberal pleading policy, and it explicitly allows the parties to plead alternative or inconsistent statements and claims.  *See* Fed. R. Civ. P. 8(d).  The elements for a breach of warranty action are (1) the existence of a warranty, (2) breach of that warranty, (3) causation, and (4) resulting damages.  *Peltz Const. Co. v. Dunham*, 436 N.E.2d 892, 894 (Ind. Ct. App. 1982).  Plaintiffs do not specifically state the nature of the Harvest Time system's defect in the body of Count I, but they do plead the necessary elements of their claim.  Plaintiffs establish the existence of the warranty, and they address second and third elements by stating that the "system is defective and contravenes [defendant's] warranty" and that, in particular, the "power sweep will not sweep around the grain bin under its own power when unloading common grains such as rice, wheat, soybeans and in some cases corn," which "requires a person or persons to…physically push the auger, creating safety risks, consuming labor, and decreasing the value of the bin."  Cmplt. ¶ 46.  The Court agrees that the complaint does not foreclose an express warranty claim because it does not appear to rely solely on a design defect.  As plaintiffs point out, the allegation that the defendants have sold retrofit kits to

8

correct the defects suggests that the defect could be one of material and/or workmanship.  The motion to dismiss will be denied on the breach of express warranty claim.

### 2. Breach of implied warranty

Plaintiffs allege in their "Breach of Warranty" count that the Harvest Time "power sweep is also not of merchantable quality nor fit for its intended use."  Defendant contends that the implied warranty of merchantability is expressly disclaimed by the terms of the warranty.  In all-capital letters, the warranty states "the manufacturer expressly disclaims any and all other warranties, including, but not limited to, express and implied warranties as to merchantability, fitness for particular purposes sold and description or quality of the product furnished hereunder."  The Terms of Sale, which plaintiffs apparently received, also disclaim in all-capital letters the express or implied warranties of merchantability and fitness for a particular purpose.  Indiana law permits the exclusion of implied warranty of merchantability by a written, conspicuous disclaimer that mentions merchantability.  Ind. Code Ann. § 26-1-316(2).  As a result, argues defendant, plaintiff's implied warranty claims are barred.

Plaintiff counters that the disclaimers were not, in fact, conspicuous.  The warranty was not provided with the Terms of Sale.  The Terms of Sale themselves were printed on the back of the invoices, and it is unclear whether plaintiffs saw the Terms of Sale at the time of purchase.

Defendant argues that plaintiffs cannot have it both ways:  that they cannot simultaneously rely on the express warranty in order to recover on the one hand, but avoid the warranty's disclaimers on the other hand.  In support, defendant cites several cases, but none involves a warranty:  *In re Estate of Palamara v. Paramara*, 513 F.E.2d 1223, 1228 (Ind. Ct. App. 1987) (antenuptial agreement); *Hickman v. State*, 895 N.E.2d 353, 359 (Ind. Ct. App. 2008)

9

(provision regarding leave time under Indiana Administrative Code); *Cornelius v. CJ Morrill*, 302 S.W.3d 176, 179 (Mo. Ct. App. 2009) (arbitration agreement); *Barrow v. Booneville No. 1, Inc.*, 31 S.W.3d 90 (Mo. Ct. App. 2000) (lease).  In fact, Indiana cases addressing express warranty claims and the validity of implied warranty disclaimers belie defendant's position. *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1084 (Ind. 1993) (vacated on other grounds); *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 948 (Ind. Ct. App. 1982); *Swan Lake Holdings, LLC v. Yamaha Golf Cart Co.*, No. 3:09-cv-228-PPS, 2010 WL 3894576 (N.D. Ind. Sept. 27, 2010).  Thus, defendant's argument that plaintiffs cannot simultaneously rely on the express warranty while seeking to invalidate the disclaimers of the implied warranties is without merit.

Notably, although the warranty and the Terms of Sale are both "necessarily embraced by" the complaint and thus may be considered by the Court at the motion to dismiss stage, *Enervations, Inc.*, 380 F.3d at 1069, the complaint does not allege anything regarding the conspicuity of the disclaimers or whether and when plaintiffs saw them.  As the plaintiffs suggest, the Court cannot resolve these factual matters on a motion to dismiss.   Taking all the facts alleged in the complaint as true, the plaintiffs have sufficiently alleged a breach of implied warranty of merchantability, and the claim survives the motion to dismiss.

**B.     Count II:  Unjust Enrichment**

Plaintiffs' unjust enrichment claim alleges that defendant "received thousands of dollars from each plaintiff and members of the Class for…power sweeps which do not adequately function for their reasonable and expected purposes."  Cmplt. ¶ 55.  As a result, plaintiffs allege,

10

defendant's "retention of Plaintiffs' money is not legally justifiable under the circumstances."

*Id.*

"For both tort and contract claims, Missouri courts apply the most-significant-relationship test as defined in the Restatement." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994). "Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." *Id.* Under § 221 of the Restatement, the Court considers:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
> (b) the place where the benefit or enrichment was received,
> (c) the place where the act conferring the benefit or enrichment was done,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 221 (1971). Here, the defendant is located in Indiana and received the alleged enrichment in Indiana, but the Harvest Time system was purchased from the retailer in Missouri and located at all relevant times in Missouri. Plaintiffs are residents of Missouri, defendant does business in Missouri, and the relationship was centered in Missouri. Because Missouri has the most significant relationship to the dispute, the Court will apply Missouri law

Defendant argues that plaintiffs' unjust enrichment count should be dismissed because, among other reasons, it is barred by the economic loss doctrine and because the plaintiffs acquired the systems through purchase contracts. "If the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not

11

apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). "Under Missouri law, remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the UCC." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130-31 (Mo. banc 2010).

Ultimately, the parties' relationships are defined by the contracts governing the sale and warranty of the Harvest Time system. This Court held that, in the context of a negligent misrepresentation claim brought by Bruce Martin Construction Co. (the retailer who sold the Harvest Time systems to the plaintiffs here) against the defendant, the economic loss doctrine prohibited a tort claim for damages. *See Bruce Martin Constr. Co. v. CTB, Inc.*, No. 1:10CV205 SNLJ, 2012 WL 718624, *2-5 (E.D. Mo. April 2012). Here, plaintiffs' unjust enrichment claim suffers a similar fate. Under Missouri law, plaintiffs' remedies are limited to those under the warranty. The Court will grant defendant's motion to dismiss Count II.

**B.     Count III:  Common Law Fraud**

Plaintiffs allege that defendant fraudulently concealed and omitted material facts about the Harvest Time system. The allegedly omitted facts include

- That defendant had not tested their power sweep on grains such as wheat, rice, and soy;
- That defendant had received customer complaints as early as 2006 that the power sweep design was not effective in handling common grains;
- That defendant had attempted several retrofits and design changes in its Harvest Time power sweeps in an attempt to improve functionality; and

- That defendant's power sweeps were not designed to work with rice, information that was only conveyed to defendant's dealers in 2008.

(Cmplt. ¶ 57.)

The tort of fraudulent misrepresentation requires proof of nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007).

Missouri does not recognize a separate tort of fraudulent nondisclosure, but "in such cases, a party's silence in the face of a legal duty to speak replaces the first element." *Id.* "A duty to speak arises where one party has superior knowledge or information that is not reasonably available to the other. Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence." *Id.* (internal citations and quotations omitted).

Defendant moves to dismiss plaintiffs' fraud count for a number of reasons. First, defendant contends that plaintiffs have not alleged that defendant had a duty to speak. In *Hess*, the Missouri Supreme Court addressed a real property buyer's claim against the seller, who knew but failed to disclose that the property was under investigation for illegal dumping of paint. The seller claimed that, through provisions in the sale contract, it bargained for the right to remain silent, and thus there was no duty to speak. The Missouri Supreme Court held the buyer alleged

13

"fraud in the inducement to contract, not fraud in the terms of the contract," and that no party may disclaim liability for fraud in inducing a contract. *Id.* at 767. "The presence of a clause disclaiming warranties in a contract does not negate a pre-contractual duty to speak." *Id.*

Plaintiffs maintain that, here, defendant fraudulently induced sales by concealing material facts about its defective sweeps. Plaintiffs allege that they purchased the Harvest Time systems in 2007 and 2008, and that defendant knew about problems with those systems as early as 2006 but that defendant chose to conceal them.

Plaintiffs, however, do not allege that they had any pre-sale dealings or communications with defendant. Rather, the plaintiffs purchased their systems from a retailer, and defendant did not enter into the dealings until the retailers sold a Harvest Time system to a customer, at which time defendant extended its written warranty (and perhaps an invoice containing Terms of Sale) to the customer. Defendant thus contends that there were no pre-contract representations or omissions, separate and apart from the contract itself, that could have given rise to an independent fraud claim. Unlike in *Hess*, where the seller and buyer communicated before entering into a contract, which gave rise to a duty to speak, the defendant here is not alleged to have had any relationship with the buyers until after the retailer sold a Harvest Time system to the plaintiffs. As the Eighth Circuit has held, a "fraud claim is permitted only if it arises from acts that are separate and distinct from the contract." *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 820 (8th Cir. 2010). Moreover, plaintiffs have not cited --- and this Court has not found --- any case in which a manufacturer that had no pre-sale relationship with the buyer was found to have a duty to speak. Here, plaintiffs have not alleged a duty to speak on behalf of the manufacturer

14

defendant, and, as a result, the plaintiffs have failed to state a claim for common law fraud against defendant.

**V.     Conclusion**

The Court will grant in part and deny in part defendant's motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss is GRANTED, in part, and DENIED, in part.

**IT IS FURTHER ORDERED** that plaintiffs' claim for unjust enrichment is DISMISSED.

**IT IS FINALLY ORDERED** that plaintiffs' claim for common law fraud is DISMISSED.

Dated this   2nd   day of January, 2013.

_____
STEPHEN N. LIMBAUGH, Jr.
UNITED STATES DISTRICT JUDGE