# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| MIKE FLYNN, STEVE WATKINS and DONNIE UNDERWOOD, JR. on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CTB, INC. ,<br><br>Defendant. | Case No.1:12-CV-00068 SNLJ<br><br>**SECOND AMENDED COMPLAINT**<br><br>**CLASS ACTION** |

Plaintiffs Mike Flynn, Steve Watkins and Donnie Underwood, Jr., on behalf of themselves and all others similarly situated, allege the following. All of the allegations set forth herein are on personal knowledge, unless otherwise stated.

1. Defendant sells the Harvest Time power-sweep auger for grain unloading, which can be sold separately or as part of a grain bin unloading system. Defendant markets its Harvest Time power-sweep auger for any free-flowing grains.

2. A grain unloading system with a power-sweep arm, when properly designed, has an auger within a sweep arm that moves along and around a grain bin floor. The sweep pushes the grain into holes on the grain bin floor. There, another auger moves the grain into other unloading vessels.

1

3.  A properly designed grain unloading system with a power-sweep arm reduces health hazards to farm workers. The power-sweep auger is supposed to sweep the remaining 15 to 20 percent of grain in a bin into the floor slots, without requiring a worker to enter the bin. Outside the bin, the worker is not exposed to possible suffocation or other respiratory irritants from the grain, or amputation or other serious injury resulting from coming into contact with an auger. A properly designed system also is more efficient than unloading grain bins by hand.

4.  Contrary to the ordinary expectations of farmers, the power-sweep arm component of the Defendant's Harvest Time unloading systems fails to function properly for its intended purpose. The power-sweep arm cannot maintain sufficient contact with the grain nor move it with sufficient force to sweep the grain into the unloading system beneath the grain bin floor. The result is that human labor must be employed to push the sweep into the grain. This exposes workers to additional hazards, delays the unloading process, and decreases the value of the grain bin.

5.  Defendant has been aware of the shortcomings of its grain unloading system and power-sweep arm since at least 2006. Defendant has made numerous modifications to the Harvest Time grain unloading system and power-sweep arm to improve its effectiveness, including: a) changing the location of the drive wheel gearbox; b) changing or adding roll bars to add support for the sweep; c) adding a hanging bracket for weights on the drive wheel gearbox to weigh down the wheel,

2

and increase contact with the bin floor and grain; d) turning the wheel hub around to keep the wheel away from screws on the bin floor that increase wear on the rubber wheel; and e) creating "Enhanced Performance Kits" that stiffen the backboard and supports.  However, these changes have not remedied the design limitations of its product.  The power-sweep arm cannot capably sweep common grains such as corn, rice, wheat, soybeans and sorghum, contrary to the reasonable expectations of Plaintiffs and similarly situated farmers.

6. Plaintiffs seek class-wide relief for all purchasers of the Harvest Time grain unloading systems and/or power-sweep arms in the form of refunds or replacement sweeps.

## VENUE AND JURISDICTION

7. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d).  This action is a class action within the meaning of § 1332(d) in which the amount in controversy exceeds $5 million and in which at least one member of the Plaintiffs' class is a citizen of a State different from that of Defendant.

8. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District and a substantial part of the property that is the subject of this action is located in this District.  Plaintiffs are citizens of Missouri and reside in this judicial district.

## PARTIES

9. Defendant CTB, Inc. is incorporated in Delaware, and headquartered at 611 N. Higbee Street, Milford, Indiana, and maintains its principal place of business at that address.

10. CTB sells the Harvest Time power sweep auger through Brock Grain Systems, which is a wholly-owned division of CTB, Inc. Brock, on behalf of CTB, markets and sells power-sweep augers for grain unloading in Missouri and throughout the United States to authorized dealers.

11. Plaintiff Mike Flynn is a resident of Portageville, Missouri. Mr. Flynn purchased two Brock Harvest Time power sweep augers in May of 2008 through a Brock authorized dealer, Bruce Martin Construction, Inc.

12. Plaintiff Steve Watkins is a resident of Hayti, Missouri. Mr. Watkins purchased a Brock Harvest Time power sweep auger in 2007, through a Brock authorized dealer, Bruce Martin Construction, Inc.

13. Plaintiff Donnie Underwood, d/b/a Underwood Farms, is a resident of Portageville, Missouri. Mr. Underwood purchased five Harvest Time power sweep augers in 2007 and 2008, through a Brock authorized dealer, Bruce Martin Construction, Inc.

## GENERAL ALLEGATIONS

14. Defendant markets its Harvest Time unloading system as a "two in one" system, which provides "under-floor tube and flight conveyor combined with

4

a floor sweep - all driven by a single electric motor." The Harvest-Time grain bin unloader and power sweep combination are operated from outside the bin. Defendant describes the Harvest Time unloading system with the power-sweep arm as a "Rugged Sweep with a Reliable Reputation."

15. According to Defendant's former employee Thomas Duffy, the purpose of the Harvest Time power-sweep arm is to get the last fifteen to twenty percent of grain out of the bin without having to manually sweep it out.

16. Upon information and belief, Defendant did not directly market or sell its Harvest Time unloading system to individual farmers. Rather, Defendant promoted its products to authorized dealers at annual meetings, and via brochures, video and live demonstrations. Then, Defendant's authorized dealers, like Bruce Martin Construction, Inc. ("Bruce Martin") sold the products to farmers who grow and store grains like corn, rice, wheat, soybeans and sorghum.

17. Defendant never tested its Harvest Time bin unloading system on any other grain besides corn and chickpeas before putting it into the stream of commerce.

18. Defendant represented to its authorized dealers that the Harvest Time bin unloading system's 8-inch model could unload 2,500-3,000 bushels per hour, while the 10-inch model could unload 4,000-4,500 bushels per hour.

19. In the manual and on decals on the unloading system, users of the system were advised never to enter the bin when the sweep was on; that making

5

contact with the sweep could cause severe bodily injury; and that entering the bin during sweep operation presented a suffocation hazard.

20. By 2006, Defendant started receiving complaints from farmers about the adequacy of the drive wheel on the power-sweep arm. The drive wheel is a small tire at the end of the power-sweep that moves the sweep arm. The rubber on the tire would often wear out after a single run. This required frequent replacement of the wheels, as well as manual force to move the sweep arm. The sweep would also leave piles of grain behind that had to be swept up manually.

21. By October of 2006, Defendant knew that the drive wheel assembly required additional weight in order to sweep through grains. CTB's Brock product manager, Tom Duffy, contacted Brock authorized dealers in an October 16, 2006 letter which stated that "it has been brought to our attention that the new Drive wheel Assembly (sic) wheel is hitting the tech screws on the flashing, but in some cases also needs some additional weight as well." Defendant came up with a kit that included gearbox weight to retrofit its Harvest Time power-sweep arms. The tire was no longer encased behind the arm, and "gearbox" weights could be added to help keep the tire in contact with the bin floor.

22. The drive wheel assembly was also the subject of Brock bulletins to dealers in August and October of 2007, as Brock instructed dealers on how to install the "Sweep Drive Retrofit," in an effort to improve functionality.

6

23. In August of 2008, Defendant started to declaim that its Harvest Time product could handle unloading certain grains. In an August 8, 2008 letter to authorized distributor Bruce Martin, Tom Duffy stated that the "Harvest-time® (sic) unload systems … are not designed for use in Rice (sic) and will not be covered under warranty if problems should occur. … If the units are being used in (sic) products like corn, beans and wheat disregard the above."

24. In June of 2009, Defendant instituted a replacement wheel program to replace the drive wheels on its Harvest Time power-sweep arm. Defendant claimed the new wheels had a useful life about 15-18 times longer than the original wheel.

25. While Defendant stated "all owners" were eligible and "every customer" would be interested in the new drive wheel, Defendant did not directly provide customers the replacement wheel. Instead, Defendant required dealers to distribute the wheels to customers.

26. In June of 2009, after several failed attempts to correct the Harvest Time unloading system and power-sweep arm deficiencies, authorized dealer Bruce Martin replaced five Harvest Time sweeps with those of a competitor, GSI, and submitted an invoice to Brock for the replacement cost. Brock refused to reimburse its dealer for those costs, stating the replacement was "clearly outside the terms of the written manufacturer's warranty and therefore no warranty credit or reimbursement will be provided by Brock Grain System[.]"

1758297.1

27. In July of 2009, Defendant started *selling* an "Enhanced Performance (EP) Add-on Kit" for Harvest Time unloading systems. The kit was to allow the "HT sweep to perform better in a wider range of grain conditions than the standard sweep." The kit consisted of a backboard stiffener to improve the strength of the sweep arm. Existing customers got a "reduced price" of 50% off for the kit.

28. Defendant has not recalled the sweep arm, nor provided a free modification that corrects the limitations of its Harvest Time power sweep.

## PLAINTIFFS' EXPERIENCES

29. Plaintiffs are all farmers in Missouri. All have grown crops such as wheat, soy beans, and corn for many years and all purchased their grain storage bins, Harvest Time bin unloading systems, and power-sweep arms from the same authorized Brock dealer, Bruce Martin Construction.

30. On May 14, 2008, CTB Inc. sent an invoice to Bruce Martin for two orders made by Plaintiff Flynn, under order numbers 530716 SO and 530722 SO. These purchases included two grain bins equipped with a Brock Harvest Time power sweep, model number BU-30S-08-4.

31. On April 19, 2007, CTB, Inc. invoiced Bruce Martin for Plaintiff Underwood's purchase of two Brock Harvest Time power sweeps, model number BU-42S-8-4. Mr. Underwood and Underwood farms would purchase three additional Brock Harvest Time systems that included the power sweep from the dealer Bruce Martin, including model BU-30S-08-02.

8

32. In February of 2007, Mr. Watkins purchased a Harvest Time bin unloading system model no. BU-42S-08-4 from dealer Bruce Martin.

33. The back of all of the CTB invoices, received only after the purchase of the equipment, states that "Seller and its division have various warranties … the current warranty as to each product being sold to Buyer is specifically incorporated herein and made a part of 'Seller's Terms of Sale' by this reference." Paragraph 7 of the Terms of Sale states that the sales agreement shall be governed by the laws of the State of Indiana. None of the CTB invoices have a signature block for the final purchaser to sign and acknowledge receipt of the invoice and any disclaimers of warranty on the invoice. None of the named Plaintiffs received the invoices nor the owners' manual that contained the warranty until after construction of the bins by Bruce Martin. Upon information and belief, Plaintiffs allege that other farmers who purchased CTB's power sweeps through a dealer (as is required), similarly did not receive an invoice or copy of warranty or disclosures until after their purchase.

34. After the installation of the bin unloading systems, the Plaintiffs each found the Harvest Time power sweep arms did not function properly. The power sweeps could rarely make even a single turn around the grain bin before the drive wheel required replacement. Persons would need to be in the bin pushing the sweep arm down and forward to have it engage the grain. Personnel would also need to sweep up behind the sweep to push the remaining grain into the unloader under the floor. The deficiencies in the power-sweep thus subject purchasers of

9

the Harvest Time sweep and their employees to the risk of serious injury, including the loss of life or limb.

35. Plaintiffs each timely notified their CTB dealer, Bruce Martin, about their problems with the Harvest Time power sweeps. They each worked with Bruce Martin on modifications to the power sweeps. Upon information and belief, Bruce Martin's modifications were made with the knowledge and support of Brock. Despite these efforts, the defective power-sweep arms still cannot adequately sweep grain by themselves.

36. Based upon the sworn testimony of Bruce Martin taken in *Bruce Martin Construction, Inc., v. CTB, Inc*., 1:10-cv-000205 (E.D. Mo.) (SNLJ), Defendant never disclosed to Bruce Martin the defective nature of its Harvest Time grain unloading system or power sweep arms. Defendant knew Mr. Martin was relating information about the use and efficacy of the product to his customers, and Defendant should have reasonably foreseen that customers would have relied on his representations about the fitness of the power sweeps for their ordinary purpose, and whether they suffered from any defects.

37. None of the Plaintiffs possess the product he bargained for. Unlike competitors' power sweep arms, the Harvest Time unloading system and power-sweep arm fails to fully sweep the grain without additional human efforts inside the bin. This limitation increases the risk of physical injury to Plaintiffs and their

10

personnel, increases labor costs, delays unloading, and decreases the value of the sweep and the storage bin.

38. Plaintiffs are aware that Bruce Martin has attempted to reach a resolution with Brock on their behalf, but has not had any success, leading Bruce Martin to sue Defendant CTB, Inc. Plaintiffs have not directly requested a refund from CTB, anticipating that such request for reimbursement or replacement from CTB would be futile.

## CLASS ALLEGATIONS

39. Plaintiffs bring this action on behalf of the following class:

All persons who purchased Brock Harvest Time grain bin unloading systems and/or power sweep arms.

40. Excluded from the class are Defendant, any entity in which any Defendant has or had a controlling interest, any entity which has or had a controlling interest in Defendant, any executives and officers of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and any judge assigned to this action and his or her immediate family.

41. This action has been brought and may be properly maintained pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.

a) Numerosity — Fed. R. Civ. P. 23(a)(1): Members of the class are so numerous and widely dispersed that joinder of them in one action is impracticable. While the precise number of class members is unknown to

11

Plaintiffs at this time, the classes are each believed to number in the thousands. The identity of each and every class member is readily ascertainable from billing information and records in Defendant's possession, custody or control. Members of the classes may be notified of the pendency of this action by first-class or electronic mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

b) Common and Predominant Questions of Fact and Law — Fed. R. Civ. P. 23(a)(2), (b)(3): Common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual class members. Because the Brock "Terms of Sales" applies Indiana law, only one state's laws apply to warranty claims. In addition, these common legal and factual questions include, but are not limited to, the following:

(1) whether the power sweep of Brock's bin unloading system was properly designed or was defective in materials or workmanship;

(2) when Defendant learned that its product could not adequately function for its intended purposes;

(3) whether Defendant intentionally omitted from its dealers and customers the limitations of its power sweeps.

c) Typicality — Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the claims of the members of the class in that Plaintiffs and all class members purchased a Harvest Time power sweep that was not capable of

12

performing its ordinary, intended and particular use, and is worth less than comparable power sweeps that can unload all sorts of grains.

       d) Adequacy — Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interest that are adverse or antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

       e) Superiority — Fed. R. Civ. P. 23(b)(3): A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The economic harm suffered by each individual class member may be limited. Given the size of individual class members' claims, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for class members to seek redress individually for the wrongs done to them. The likelihood of individual class members prosecuting separate claims is exceedingly remote, and even if class members could afford individual litigation, given the size of the Class, the court system could not. Individual litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, a class action will present far fewer management difficulties, promote an orderly and expeditious administration and adjudication of the class claims, foster economies of scale,

ensure uniformity of decisions, and provide comprehensive supervision by a single court.

# FIRST CAUSE OF ACTION

**Breach of Warranty (Ind. Code Ann. § 26-1-2-313; § 26-1-2-314; § 26-1-2-315)**

42. Plaintiffs herein incorporate the previous paragraphs as if fully stated herein.

43. Defendant warranted that its Harvest Time bin unloading system was capable of sweeping grain from outside the bin without additional human labor. Defendant warranted that its systems were free from defects in material or workmanship for one (1) year from and after the date of initial installation by or for the original purchaser. Defendant warranted that if such a defect is found to exist within the one-year period, it would, at its option, (a) repair or replace such product free of charge, F.O.B. the factory of manufacture, or (b) refund to the original purchaser the original purchase price, in lieu of such repair or replacement.

44. Defendant's warranty is one for future performance because it provides for future conduct from Defendant if and when any defects were discovered, not from date of delivery, but after installation.

45. Defendant limited its warranty to one-year. This limitation is unconscionable, in light of Defendant's superior information about the latent design defect of its product.

14

46. Defendant included limitations in its Terms of Sale as to what defects are covered by its warranty, excluding design defects. The Terms of Sale also included disclaimers as to implied warranties. These limitations are invalid against purchasers such as the Plaintiffs and those similarly situated purchasers who do not receive the Terms of Sale, as that goes to the authorized dealer, and since the warranty limitations in the Terms of Sale appear on the back of the page, with no ability for the customer to acknowledge them and agree to them before the transaction.

47. Defendant's Harvest Time bin unload system is defective and contravenes its representations and warranty. According to CTB's Tom Duffy, the power-sweep was intended to remove the last fifteen to twenty percent of the grain from the bin without having to manually shovel it out. However, the power sweep will not sweep around the grain bin under its own power when unloading common grains such as rice, wheat, soybeans and in some cases corn, rendering it ill-suited for its intended purpose. It requires a person or persons to be inside the bin to physically push the auger, creating safety risks, consuming labor, and decreasing the value of the bin.

48. The Defendant's Harvest Time power sweep is also not of merchantable quality, nor fit for its intended use.

49. Plaintiffs' builder and Brock authorized dealer – Bruce Martin – provided notice of the breach of warranty regarding the defective nature of the

15

Harvest Time power sweeps by at least June of 2008. Bruce Martin informed Defendant that Plaintiffs were customers who had purchased the power sweeps and required remedial action. Defendant has had several years to prepare for negotiation and litigation and gather evidence regarding the Harvest Time power sweeps it sold to Plaintiffs and similarly situated customers.

50. From 2008 to 2010, Defendant made promises to Bruce Martin to remedy its customers' defective power sweeps, including Plaintiffs' Brock Harvest Time power sweep. Defendant undertook this course of conduct to forestall litigation.

51. Furthermore, Defendant has attempted to sell retrofit kits to its customers, in effect charging them for attempting to remedy the defects in its product.

52. Defendant has not repaired nor replaced Plaintiffs' power sweeps, nor has it for other similarly situated purchasers.

53. As a result of Defendant's breach, Plaintiffs and those similarly situated have suffered damages including their purchase of an unloading system that is less valuable than represented and which resulted in increased labor costs. These defects have caused monetary injuries to Plaintiffs and similarly situated farmers.

16

## SECOND CAUSE OF ACTION

### (Common Law Fraud – Missouri law)

54. Plaintiffs herein incorporate the previous paragraphs as if fully stated herein.

55. Defendants fraudulently concealed and omitted material facts about their Harvest Time bin unloading systems from its authorized dealers such as Bruce Martin. These omitted facts include, but are not limited to:

   a. That Defendant had not tested its power sweep on grains such as wheat, rice, and soybean;

   b. That Defendant had received customer complaints as early as 2006 that the power sweep design was not effective in handling common grains;

   c. That Defendant had attempted several retrofits and design changes in its Harvest Time power sweeps in their attempt to improve functionality; and

   d. That Defendant's Harvest Time power sweeps were not designed to work with rice, and only conveyed that information to its authorized dealers in 2008.

56. Had these material facts been known to its authorized dealers, it is foreseeable that this information would have passed that along to Plaintiffs. With this information, Plaintiffs, and those similarly situated, would not have purchased

17

1758297.1

the Brock Harvest Time power sweeps.

57. As a result of Defendant's omissions of material facts, Plaintiffs and those similarly situated have suffered injury, including the purchase of bins and/or an unloading system that is not as valuable as for what they bargained for.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

a. For an order certifying the proposed Class herein under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiffs and their counsel of record to represent said Class;

b. For an order requiring Defendant to replace or repair its defective power sweep augers with a model that will perform the tasks Defendant represented and warranted that its Harvest Time system would perform;

c. For restitution of all money obtained from members of the Class from Defendant;

d. For actual damages;

e. For attorneys' fees and costs of suit, including expert witness fees;

f. For an order awarding pre-judgment and post-judgment interest as prescribed by law; and

g. For such other and further relief as this Court may deem just and proper.

Dated: July 12, 2013               Respectfully submitted,


                                   _____*/s/ Phillip J. Barkett, Jr.*_____

                                   Phillip J. Barkett, Jr.
                                   J. Michael Ponder
                                   Kathleen A. Wolz
                                   COOK, BARKETT, PONDER & WOLZ, L.C.
                                   1610 N. Kingshighway, Suite 210
                                   Post Office Box 1180
                                   Cape Girardeau, MO 63702-1180
                                   (573) 335-6651

                                   Andrew N. Friedman (admitted pro hac)
                                   Douglas J. McNamara (admitted pro hac)
                                   Mary J. Bortscheller
                                   COHEN MILSTEIN SELLERS & TOLL PLLC
                                   1100 New York Avenue NW
                                   Suite 500 West
                                   Washington, DC 20005
                                   Telephone: (202) 408-4600
                                   Facsimile: (202) 408-4699

                                   *Attorneys for Plaintiffs and those similarly situated*

1758297.1